IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARRIN ROBINSON, | ) |
|       Plaintiff | ) |
| vs. | ) |
| ROBERT ONSTOTT, | ) Civil Action No. 03-1545 |
| | ) Magistrate Judge Lisa Pupo |
| | ) Lenihan |
|       Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Darrin Robinson, (Plaintiff) is a state prisoner who filed a civil rights suit asserting an Eighth Amendment violation based on the Defendants' alleged failure to protect him from a prisoner assault. All defendants except one, Robert Onstott, have been granted summary judgment on the basis of Plaintiff's failure to have exhausted his available administrative remedies by failing to name them in his initial grievance filed pursuant to the administrative remedies provided by the Pennsylvania Department of Corrections (DOC). For the reasons set forth below, the Defendant is entitled to summary judgment as to Plaintiff's claim. An appropriate order follows.

**A. Standard of Review - Summary Judgment**

Both the Plaintiff and the Defendant have filed motions for summary judgment pursuant to Fed. Rule Civ. Proc. 56 (doc. nos. 46 & 48). Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, ". . . the pleadings, depositions, answers to interrogatories and admissions on file,

together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. Rule Civ. Proc. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth ". . . specific facts showing that there is a <u>genuine issue for trial</u> . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. <u>Matsushita Elec. Ind. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). The inquiry, then, involves determining " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " <u>Brown v. Grabowski</u>, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting <u>Anderson</u>, 477 U.S. at 251-52). If a court concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted.

Anderson, 477 U.S. at 249-50.

**B. Material Facts**

Instantly, the parties dispute the legal significance of essentially undisputed facts. Namely, they dispute whether Defendant Onstott was deliberately indifferent to a known risk of harm when he followed DOC policy of removing handcuffs from RHU prisoners one at a time after they were locked into outside exercise cages. The following are the relevant facts.

In June of 2002, Plaintiff was an inmate in the Restricted Housing Unit (RHU) at SCI-Pittsburgh. The RHU houses inmates in Administrative Custody (AC) (inmates believed to be a danger to persons in the institution) and those in Disciplinary Custody (DC) (inmates found guilty of misconducts). Inmates in the RHU are more violent than those in general population; they already are in prison for breaking the rules and cannot conform their behavior while serving their time. Consequently, violence in the RHU is not uncommon.

Allowing prisoners the opportunity to exercise in prison is required both by the United States Constitution and DOC policy. In the RHU, DOC practice requires inmates to undergo a complete strip search prior to being allowed outside into the exercise cages.[1] Specifically, inmates are required to remove all of their clothing in their cell while they are observed through a window by

---

1. *See* Defendant's Deposition Testimony, Exhibit C, doc. no. 51.

a guard standing outside. Their clothing is given to the guard who pats it down before giving it back to the inmate. After the inmate is clothed, he is handcuffed and escorted to the exercise cages where up to four or five inmates are placed inside each one. Placement inside the cages typically is governed by the order of the inmates coming into the yard following their strip search. After all of the inmates are locked inside the cage, an RHU guard removes the inmates' handcuffs one at a time through an opening in the exercise cage door; there is only one opening per cage. The first inmate to the door gets his handcuffs removed first. After the handcuffs are removed, the inmate is supposed to go to the back of the cage while the rest of the inmates' cuffs are removed.

On June 26, 2002, Plaintiff and inmate Keith Cooper both were housed in AC in the RHU. On that date, both inmates requested to be taken to exercise in one of the outside exercise cages. When Defendant Onstott came into the yard, inmates Robinson and Cooper, along with two other inmates, were locked into exercise cage EY-01. When Defendant came to the cage to remove handcuffs, inmate Cooper was closest to the door. Defendant Onstott proceeded to remove Cooper's handcuffs. Before Onstott could remove the next inmate's handcuffs, Cooper attacked Plaintiff with a homemade shank made from a broken piece of a plastic food tray. Cooper repeatedly stabbed Plaintiff who was unable to protect himself because his handcuffs had not been removed. Plaintiff suffered stab wounds to the face,

neck, arms and hands before the guards were able to enter the cage and subdue Cooper. Plaintiff suffered injuries serious enough to require that he be taken to a hospital for treatment. It was later determined by DOC personnel that Defendant Cooper had hidden the shank in a wrist guard and that he had pretended to be friendly towards Plaintiff in order to set him up for attack due to a rivalry between North and South Philadelphia gangs.

### C. Liability under Section 1983

Plaintiff's complaint seeks recovery under 42 U.S.C. § 1983. In order to state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements: 1) the alleged misconduct must have been committed by a person acting under color of state law; and 2) the defendants' conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

Plaintiff's claim asserts liability against Defendant under the Eighth Amendment, which provides as follows.

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." U.S. Const.

5

amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). This requires prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners. Farmer, 511 U.S. at 834 ("[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'") (quoting Rhodes v. Chapman, 452 U.S. 337, 345 (1981)).

Every Eighth Amendment claim embodies both an objective and a subjective component. In the context of a "failure to protect" claim, a plaintiff must demonstrate that: 1) he is incarcerated under conditions posing a substantial risk of serious harm; and 2) prison officials showed "deliberate indifference" to such risk. *Id.*, 511 U.S. at 834. The first criterion requires a plaintiff to demonstrate that he suffered a deprivation that is "objectively sufficiently serious." *Id*. In determining whether a prisoner has alleged a risk that is objectively serious, a court must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that

unwilling exposure to that risk violates contemporary standards of decency. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. Helling v. McKinney, 509 U.S. 25, 35 (1993).

The second criterion, "deliberate indifference," requires that a plaintiff show that the defendant prison official had a sufficiently culpable state of mind. Farmer, 511 U.S. 828. The Supreme Court explained the deliberate indifference standard in Farmer as follows.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement <u>unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference</u>. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer, 511 U.S. at 837-838 (emphasis added). Actual knowledge can be proven circumstantially where the general danger was obvious. For example, an inmate may present evidence showing that a

substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past and the circumstances suggest that the defendant being sued had been exposed to information concerning the risk and thus must have known about it. Farmer, 511 U.S. at 842-43.

This standard was summed up by the Court of Appeals for the Third Circuit as follows.

> . . . To be liable on a deliberate indifference claim, a defendant prison official must both "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware. However, subjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk. Finally, a defendant can rebut a prima facie demonstration of deliberate indifference either by establishing that he did not have the requisite level of knowledge or awareness of the risk, or that, although he did know of the risk, he took reasonable steps to prevent the harm from occurring.

Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citations omitted).

Plaintiff has not demonstrated that Defendant Onstott acted with deliberate indifference to his safety when he uncuffed inmate Cooper's handcuffs on June 26, 2002. To show deliberate indifference, the prison official need not believe or intend that

8

the inmate will actually be harmed; rather, he is liable if he consciously ignores a known substantial risk to an inmate's safety. Farmer, 511 U.S. at 842. Here, Defendant Onstott, as well as three other RHU guards, all averred that they thought that Robinson and Cooper were pals because they repeatedly exercised together while in the RHU.[2] Onstott testified that he had been an RHU guard for seven or eight years at the time of the incident. Although he was aware of fights between uncuffed RHU inmates in the RHU exercise cages, he was not aware of any altercation by an uncuffed inmate on a cuffed inmate in the RHU cages prior to this incident. Moreover, Onstott was not aware of any other incident where an inmate was able to sneak a weapon into the RHU exercise cages. There simply is no record evidence for a factfinder to conclude that Onstott was aware, or should have been aware, of any intolerable threat to Plaintiff's safety.

Plaintiff's citations to twelve inmate fights in the two years proceeding the June 26, 2002 event do not show a pervasive pattern of attack. As Defendant points out, all of these attacks, save one, were between uncuffed inmates. The only documented attack by an uncuffed inmate on a cuffed inmate did not involve a weapon. Onstott was well aware of the RHU policy of strip searching inmates

---

2  See Deposition Testimony of Robert Onstott, Exhibit C, doc. 51-3; Declaration of Lee Johnson, Exhibit F, doc. 51-3; Declaration of Lee Estock, Exhibit G, doc. 51-3; Declaration of John Gilliam, Exhibit H, doc. 51-3.

prior to exercise as he participated in it almost every working day. He assumed Cooper had been thoroughly searched on June 26, 2002 and had no reason to believe he could have carried a weapon into the cage. While Onstott had some concerns about the one-at-a-time handcuff removal practice, his failure to discuss these with his supervisor is an insufficient basis upon which to impose liability. Onstott had no responsibility whatsoever in making DOC policy. Nor did his immediate supervisors. Nor was he aware of any evidence of a pervasive risk of harm to cuffed inmates posed by uncuffed inmates such as to support a recommendation to change the policy.

Cooper attacked Plaintiff because of a gang rivalry between North and South Philadelphia prisoners and pretended to be friendly with Plaintiff in order to get a chance to attack him. Nothing in the record suggests that Defendant Onstott should have been aware that Cooper posed a significant risk.

A different situation was presented in Davidson v. Cannon, 474 U.S. 344 (1986), where the inmate had received a threat from another inmate and then communicated the threat to prison officials. The defendant officials deemed the threat non-serious and did not take any action; two days later the plaintiff was attacked and injured by the cited inmate. The District Court determined that the inmate had failed to establish an Eighth Amendment claim because there had been no deliberate indifference and the incident related to a single attack. *Id*., 474 U.S. at 346. However, the inmate

10

prevailed under the Due Process Clause pursuant to his claim that prison officials negligently had failed to protect him from attack. *Id*. Ultimately, the United States Supreme Court reversed this determination and held that, even though the officials' lack of due care had led to the plaintiff's injuries, such "negligence" could not be the basis of a constitutional violation. *Id*. at 347-348. Prisons are violent places and correctional officers can not be held liable for failing to prevent every instance of harm that occurs.

The Supreme Court repeatedly has emphasized that the deliberate indifference standard is a stringent standard of fault, requiring proof that a defendant disregarded a <u>known or obvious consequence</u> of his action. <u>Board of County Commissioners of Bryan County v. Brown</u>, 520 U.S. 397, 410 (1997) (emphasis added). While the harm actually suffered by Plaintiff gives this Court the benefit of hindsight, it does not reasonably support an inference that Defendant disregarded a substantial risk to the Plaintiff's safety. Put simply, Defendant's actions do not show any conscious, culpable refusal to prevent a <u>known</u> risk of harm. *See* <u>Caldwell v. District of Columbia</u>, 901 F.Supp. 7, 9 (D.D.C. 1995) (correction officers' alleged negligence in following prison procedures in the opening and closing of cell doors did not rise to the level of deliberate indifference), *appeal dismissed*, 1996 WL 587652 (D.C. Cir. Sep. 16, 1996); <u>Doyle v. District of Columbia</u>, 1997 WL 590799, *3 (D.D.C. 1997) (plaintiff's general allegations that defendants showed

11

deliberate indifference to prison safety failed to state any Eighth Amendment claim). An appropriate order follows.

**AND NOW**, this 14th day of February 2008:

**IT IS HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment (doc. no. 46) is **DENIED.**

**IT IS HEREBY ORDERED** that the Defendant's Motion for Summary Judgment (doc. no. 48) is **GRANTED** and summary judgment is entered in his favor.

Lisa Pupo Lenihan
U.S. Magistrate Judge